J-S78042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :             PENNSYLVANIA
                                                :

          v.                                   :
                                              :

LAFAYETTE MILLER                :
                                              :

          Appellant               :    No. 1105 EDA 2018

Appeal from the PCRA Order March 29, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007177-2013

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:        **FILED FEBRUARY 21, 2019**

Appellant, Lafayette Miller, appeals *pro se* from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA).  We affirm.

The PCRA court sets forth the underlying facts and procedural history and facts as follows:

> In its January 8, 2016 Opinion, [the trial court] summarized the relevant facts as follows:

>> Simon Tan owned and rented out apartments at 1239 Vine Street ("Vine Street property").  On April 5, 2013, William Dorsey, a second-floor tenant at the Vine Street property, called Tan and arranged for Tan to collect his rental payment.  That same day, Tan met Dorsey at the second-floor unit and collected $1,100 in cash.

>> After collecting the cash, Tan placed the cash in his pocket and went downstairs to an empty first-floor unit.  While Tan read his mail on the first-floor, two

_____

*   Former Justice specially assigned to the Superior Court.

males entered. The taller male (later identified as Phonso Simmons) aimed a handgun at Tan's head. The shorter male, whom Tan identified at trial as the Defendant, Lafayette Miller [hereinafter "Appellant"], forced Tan to remove the rental money from his pocket.

After Appellant took the rental money, Simmons ordered Tan to remove his pants and jacket. Inside Tan's jacket were his cell phone and wallet, which held an additional $1,000 in cash. Appellant also took another $260 from Tan's pocket. After Appellant gathered Tan's clothes, Simmons struck Tan in the head with a gun, knocking him to the ground. Appellant and Simmons then fled to Vine Street.

At the same time, Philadelphia Police Detective Robert Conway, while driving on Vine Street, saw Simmons wearing black sweatpants and a brown-hooded sweatshirt, leaving the Vine Street property. Seconds later, Detective Conway witnessed Tan, dressed in just underwear and a t-shirt—his head, hands, and chest covered in blood—fleeing from the same property, shouting for help.

[Detective Conway decided to follow Simmons and found him with Appellant. When the Detective addressed the two with "Police, stop," they fled on foot. A building security guard witnessed the two men dive through an opening to the building's basement, and he flagged Detective Conway when he saw the Detective was in pursuit.

The security guard found Tan's wallet lying on the ground outside the basement opening. Detective Conway, meanwhile, apprehended Simmons as he walked up a ramp leading from the basement. Responding officers later found Appellant hiding in the building's crawl space. Police brought Tan to the apartment building, where he identified Simmons and Appellant as his robbers.

A search of the basement recovered clothing belonging to both the suspects and Tan. Also

- 2 -

recovered was a .357 magnum revolver and Tan's car keys, cell phone, and cell phone case.].

Following Appellant's arrest, police recovered a cell phone and wallet from his person. The wallet contained a Golden Nugget Casino card with Appellant's name, plus a list that included Dorsey's and Simmons' phone numbers. A search warrant on Appellant's phone revealed a number corresponding with Dorsey's phone.

The search also revealed that right before the robbery, at 5:28 p.m., Dorsey sent a text message to Appellant's cell phone that read "he here." At 5:30 p.m., Appellant's cell phone sent a text message back that read, "okay, w[h]ere he at?" All told, on the day of the robbery, Appellant and Dorsey communicated by cellphone more than twenty-five times; Appellant and Simmons communicated by cell phone four times.

Surveillance video from a building adjoining to the Vine Street property showed Appellant and Simmons entering the Vine Street property's first-floor unit at 5:46 p.m. on the day of the robbery. In the video, Simmons wore a dark-colored sweatshirt and a hood, while Appellant wore a red jacket and a sweatshirt. Approximately one minute later, the video showed Appellant and Simmons leaving the Vine Street property. Moments later, the video showed Tan, without any pants, fleeing the same property.

Trial Court Opinion, 1/8/16, at *2-5.

On April 7, 2013, Appellant was arrested and charged with Robbery, Conspiracy to Commit Robbery, and related offenses. On March 3, 2015, Appellant appeared before [the trial court] and elected to be tried by a jury.[ ] The Commonwealth proceeded to trial on the Robbery, Burglary, Aggravated Assault, Conspiracy, PIC, and Possession of Firearm Prohibited charges. On March 10, 2015, the jury returned a verdict of guilty to Conspiracy and verdicts of not guilty to PIC and Aggravated Assault. The jury hung on the Robbery and Burglary counts and a mistrial was declared for those charges. On this same date, the

Commonwealth *nolle prossed* the charge of Possession of a Firearm Prohibited.

Sentencing was deferred until June 15, 2015, for completion of mental health and pre-sentencing reports. The case was rescheduled for trial on the Robbery and Burglary counts before the Honorable Susan Schulman, but the Commonwealth decided to drop the remaining charges. At sentencing, on June 15, 2015, the Commonwealth moved to *nolle pros* the Robbery and Burglary counts, which [the trial court granted]. This same date, [the trial court] imposed a term of imprisonment of eight and a half to twenty years for Conspiracy to Commit Robbery. On June 23, 2015, Appellant filed a Motion for Reconsideration of Sentence, which this Court denied on June 25.

On November 3, 2016, the Superior Court affirmed Appellant's judgment of sentence. On February 22, 2017, the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal.

On October 11, 2017, Appellant filed a timely *pro se* [PCRA] petition. On February 7, 2018, PCRA counsel filed a no-merit letter pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) and a Motion to Withdraw. On February 15, 2017, upon independent review, this Court agreed that the instant petition was meritless and issued a Notice of Intent to Dismiss under Pa.R.Crim.P. 907. On March 6, 2018, Appellant filed his Response to Counsel's **Finley** letter [asserting the merit to each of his *pro se* issues. Upon the PCRA court's independent review of both the *pro se* petition and counsel's **Finley** letter, the PCRA court denied Appellant relief, granted counsel's request to withdraw, and advised Appellant of his right to proceed *pro se* or with retained counsel.].

PCRA Court Opinion, 3/29/18, at 1-4, 10.

Appellant filed a timely *pro se* notice of appeal, and he has submitted a *pro se* brief in which he raises the following questions for our consideration.

1. Was trial counsel ineffective for failing to seek pre-trial suppression of the evidence obtained from the Appellant's cell phone without a search warrant?

- 4 -

2. Was trial counsel ineffective for failing to request a jury instruction for conspiracy based on multiple objectives?

3. Was trial counsel ineffective for failing to object to the improper calculation of the Appellant's prior record score?

Appellant's brief, at 4-5.

Initially, we outline our standard of review of a PCRA order.

> Under the applicable standard of review, we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error. *Commonwealth v. Marshall*, 596 Pa. 587, 947 A.2d 714, 719 (2008). The PCRA court's credibility determinations, when supported by the record, are binding on this Court. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 532, 539 (2009). However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions. *Commonwealth v. Rios*, 591 Pa. 583, 920 A.2d 790, 810 (2007).

*Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011).

Appellant's issues all center on allegations that trial counsel provided ineffective assistance. When considering an allegation of ineffective assistance of counsel, we presume that counsel provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) petitioner was prejudiced by counsel's action or omission. *Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa. Super. 2018). An ineffective assistance of counsel claim will fail if the petitioner's evidence fails to meet any one of the three prongs. *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013). Because courts must presume that

counsel was effective, the burden of proving ineffectiveness rests with the petitioner. ***Commonwealth v. Montalvo***, 114 A.3d 401, 410 (Pa. 2015).

> Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. ***Commonwealth v. Dennis***, [ ], 950 A.2d 945, 954 [(Pa. 2008)]. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must advance sufficient evidence to overcome this presumption. [***Commonwealth v.***] ***Sepulveda***, 55 A.3d [1108, 1117 (Pa. 2012)].
>
> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. ***Id.*** at 1117–18; ***Commonwealth v. Albrecht***, [ ] 720 A.2d 693, 701 [(Pa. 1998)]. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim. ***Commonwealth v. Jones***, [ ] 912 A.2d 268, 278 [(Pa. 2006)].

***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016).

In Appellant's first issue, he maintains counsel ineffectively failed to seek suppression of evidence allegedly obtained by means of a post-arrest, warrantless search of information stored in his cell phone. Specifically, Appellant argues that, on the evening of his April 5, 2013 arrest, detectives illegally scrolled through his cell phone and obtained text messages exchanged between a co-defendant and himself.

Evidence of this illegal warrantless search, Appellant claims, is found in Detective Earl Martin's April 6, 2013, affidavit of probable cause supporting the Commonwealth's application for a search warrant, where the detective states Appellant possessed a cell phone "and *through investigation* it is

believed that other perpetrators made (sic) be involved in planning and facilitating this home invasion robbery." Appellant's brief, at 8 (emphasis added). The "investigation," Appellant argues, can only refer to an unlawful search of his phone.

Appellant also alleges "it is equally clear *via* electronic records that [his] cell phone was illegally accessed on April 5, 2013, prior to the warrant issuing." *Id*. In this regard, he appears to reference Commonwealth trial exhibits C-55(A) and (B), which consisted of photographs of two separate screens on his cell phone. The first photograph depicted the "Messaging" screen providing a log of seven contacts who recently text messaged his cell phone. While most of the contact entries are obscured by a large window providing more information for contact "W J", who became a subject of the investigation, the entry for an unrelated contact named "Nacta" was still visible at the bottom of the screen. On the same line across from the "Nacta" entry was the date "Apr 5 2013." Appellant claims this was the date on which the photograph the phone's screen was taken, thus proving authorities unlawfully accessed his phone.

The Commonwealth counters that the certified record fails to support Appellant's bald assertion that police accessed information from the cell phone prior to receiving a search warrant. Instead, the Commonwealth posits, trial exhibits of record show that authorities immediately applied for a search warrant to access texting and other transmission information in Appellant's cell phone because their investigation placed several persons under suspicion

for robbing and assailing Mr. Tan. Pursuant to a search warrant issued just after midnight of April 7, 2013, the Commonwealth claims, it executed its search of the cell phone's contents at 1:30 a.m., April 7, 2013

Moreover, the Commonwealth continues, it was not until execution of the first warrant that authorities discovered a text exchange between Appellant's cell phone and a phone belonging to contact "W J" suggesting an attempt to synchronize their actions just minutes before their assault of Mr. Tan. Detective Martin then applied for a second warrant on April 9, 2017, to access subscriber information for the "W J" cell phone, which turned out to belong to co-defendant William Dorsey.

Finally, the Commonwealth argues that Appellant erroneously infers from Commonwealth Exhibits C-55(A) and (B) that the photographs of his cell phone screens were taken on April 5, 2013. The Commonwealth contends, instead, that the date visible on the first exhibit clearly corresponds to the text message exchange itself and not to when the photograph of phone screen was taken.

Our review of the record supports the Commonwealth's position, as a careful examination of the exhibits shows Appellant's theory is flawed. First, with respect to the photograph of the "Messaging" page in Exhibit C-55(A), we conclude the date "Apr 5 2013" appearing on the same line opposite the contact "Nacta" refers not to the real-time date as it existed when investigators photographed the cell phone screen but, instead, to the date on which "Nacta" text messaged Appellant's cell phone. This conclusion becomes

inescapable when one observes that the "3" in the year "2013" as it appears on the "Nacta" line aligns perfectly in the same column with six other "3"s above it appearing at the end of their respective contact lines.

As explained above, the photograph in Exhibit C-55(A) depicts the cell phone screen display after investigators opened a new window to view additional information for listed contact "W J," whom they suspected to have played a role in Mr. Tan's robbery. The window predominates on the screen and, thus, obscures most of the information pertaining to the other six text messages appearing on the message log. Remaining visible at the far right end of each contact's line, however, is the number "3." When each "3" is viewed in light of the completely visible "Nacta" text message date at the end of its line, the only reasonable inference is that each "3" is the last digit of the year 2013, which in turn is part of the date on which that corresponding text message was received.

Further undermining Appellant's contention that the exhibits prove investigators searched his cell phone on April 5, 2013 is Exhibit C-55(B), which consists of a photograph depicting the cell phone screen displaying the actual text message exchanges between Appellant and "W J." Significantly, the texts include not only the incriminating April 5, 2013, exchange of "he here" and "Ok, w[h]ere he at?" between the two men just minutes before the time Mr. Tan was robbed, but also two unanswered texts from WJ received on the following afternoon of April 6, 2013. Therefore, contrary to Appellant's

assertion, this screen offers no proof that investigators accessed his phone on April 5, 2013.

Finally, the exhibits strongly suggest that investigators took the two photographs just one minute apart. Specifically, the cell phone screen depicted in Exhibit C-55(A) bears the time of "9:27 PM" at the very top right margin, while the screen depicted in Exhibit C-55(B) bears the time of "9:28 PM" in the same location. There is no indication that the time display was manipulated in any way, and Appellant makes no such argument. Therefore, as we have already established that the photo in Exhibit C-55(B) could not have been taken on April 5, 2013 as alleged by Appellant, it follows that the photo in Exhibit C-55(A), taken one minute beforehand, also could not have been taken on April 5, 2013.

Hence, Appellant has identified no evidence to support his accusation that investigators accessed his cell phone information on the night of his arrest on April 5, 2013. He, therefore, has not met his burden of demonstrating arguable merit to his claim that trial counsel ineffectively failed to seek suppression of incriminating evidence obtained from his cell phone. As counsel may not be deemed ineffective for failing to raise a meritless claim, *see Johnson*, *supra*, we discern no error in the PCRA court's denial of relief on this claim.

In Appellant's second issue, he contends trial counsel ineffectively failed to object to the court's jury instruction for conspiracy that was limited to conspiracy to commit robbery even though he was charged with conspiracy

generally and other lesser offenses besides robbery. PCRA counsel declined to present advocacy on this claim after his review of the record satisfied him that the jury instruction properly tracked the Commonwealth's theory of the case that the criminal objective to commit robbery was the sole objective of the co-defendant's conspiracy

According to Appellant, because "the victim testified that one of the perpetrators left the area, and only then did the second person commit the assault and robbery[,] it can be inferred from this evidence that Appellant did not conspire with anyone to assault or rob the victim." Appellant's brief at 15. Appellant maintains, therefore, that the instruction became confused where

> the trial court's instructions for conspiracy failed to distinguish the individual counts. Of additional significance, the criminal information's charging the conspiracies did not differentiate as objectives the specific offenses, instead, listing, *inter alia*, conspiracy generally as an objective. While each of the above factors represents a potential, serious flaw in the manner in which trial was conducted, counsel failed to object to the instruction on general conspiracy. This was clear error.
>
> In this regard, viewing the record in the light most favorable to the Commonwealth, there is inadequate support in the record for the jury's verdict. . . . The prejudice suffered is clear: the jury returned a vague verdict in which they did not find the Appellant guilty of any specific charge under the conspiracy statutes.

Appellant's brief at 17.

Problematic for Appellant is that this Court has already determined on direct appeal that the trial court's jury instruction was appropriately tailored to the Commonwealth's prosecution of the case, and that the jury's verdict was, therefore, anything but vague. In **Commonwealth v. Miller**, No. 2272

- 11 -

EDA 2015, unpublished memorandum at 5 (Pa. Super. filed 11/3/16), we reviewed whether the evidence admitted at trial and the court's instruction were such that Appellant's conspiracy conviction could be construed as a conspiracy to commit one of the lesser crimes with which he was charged. This Court reviewed the record and determined "the trial court correctly concluded that the jury found Appellant guilty of conspiring to commit robbery." *Id*. at 5.

> In making this determination, we observed:

> the Commonwealth pursued only the charge of conspiracy to commit robbery. This is evidenced by the assistant district attorney's closing argument. During argument the Commonwealth made clear that the aim of prosecution was to convict Appellant of conspiracy to commit robbery, not conspiracy to commit trespass or conspiracy to commit assault. *See* N.T. 3/9/15, at 47, 62. Most importantly, the jury instructions addressing conspiracy only discussed conspiracy to commit robbery." *See* N.T., 3/9/15, at 92 (Appellant "is charged with conspiracy to commit robbery.") There is no mention in the jury instructions of conspiracy to commit trespass or conspiracy to commit assault. Viewed in its entirety, the record indicates that the jury found Appellant guilty of conspiring to commit robbery."

*Id*.

Appellant now couches this previously failed argument within an ineffective assistance of counsel claim and contends, *inter alia*, that he suffered prejudice from counsel's failure to object to a jury instruction that promoted a vague verdict of conspiracy. As explained above, however, this Court has already rejected the notion of a vague conspiracy verdict, thus undermining the predicate to Appellant's prejudice prong argument herein.

Having failed to establish that he was prejudiced by trial counsel's election against objecting to the jury instruction, Appellant cannot prevail on his second issue.

Finally, in his third issue, Appellant contends trial counsel ineffectively failed to object to an improper calculation of his offense gravity score ("OGS") that, he claims, led to an enhanced sentence.[1]  Specifically, Appellant argues that whereas the jury convicted him of conspiracy to commit robbery, *threat of bodily injury*, which carries an OGS of 10 and a standard range sentence of 60 to 72 months, the court erroneously calculated his sentence as if the jury convicted him of conspiracy to commit robbery, *causing serious bodily injury*, which carries an OGS of 12 and a standard range sentence of 84 to 102 months.

Initially, we note Appellant fails to develop a meaningful argument with references to the record and discussion of pertinent authority supporting his position, as he, instead, simply asserts summarily that the jury convicted him of conspiracy to commit robbery, threat of bodily injury.  To develop an issue for our review, Appellant bears the burden of ensuring that his argument section includes citations to pertinent authorities as well as discussion and analysis of the authorities. *See* Pa.R.A.P. 2119(a); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa.Super. 2007) ("[I]t is an appellant's duty to

---

[1] In the heading to Appellant's third argument, he refers to an alleged mistake in the calculation of his "prior record score."  It is apparent from his argument, however, that he actually challenges counsel's failure to object to an allegedly improper calculation of his "offense gravity score."

present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." (citations omitted)).  As this Court has made clear, we "will not act as counsel and will not develop arguments on behalf of an appellant." *Id.* (citation omitted).  Where defects in a brief "impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Id.* (citations omitted).

We decline to find Appellant has sustained his appellate burden where he fails to discuss how both the evidence and controlling authority together show how it was ineffective of trial counsel to object to a sentence calculation based on conspiracy to commit robbery, causing serious bodily injury. Accordingly, we deem Appellant's final issue waived.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/19